### JOHN B. ORTON, JR. v. EDSON REDUCTION MACHINERY CO.

1. CORPORATION HAVING SOLD STOCK AS FULLY PAID CANNOT SUBSEQUENTLY ASSESS HOLDER FOR DIFFERENCE IN MARKET AND PAR VALUE THEREOF.

A corporation having issued its stock as fully paid, in exchange for property transferred at an agreed valuation, cannot thereafter, without the consent of the stockholder, treat his stock as only partially paid and assess him for the difference between the market value of said property and the par value of the stock issued in exchange for it.

Cuyahoga County.

2. WHERE FRAUD TAINTS TRANSACTION CORPORATION'S REMEDY IS TO RESCIND.

In such case, where actual fraud has entered into the transaction, the remedy of the corporation is to rescind the agreement, tender the property back to the stockholder and ask that he be compelled to return the stock, or its market value, to the corporation.

APPEAL.

**O. J. Horn** and **A. A. Bemis,** for plaintiff:

Estoppel of corporation to collect subscriptions on stock held out to be paid up, etc. 1 Cook,. Corporations Secs. 38, 42, 46.

The power to make assessments on corporate stock is wholly statutory. *Wells v. Green Bay & M. C. Co.* 90 Wis. 442 [64 N. W. Rep. 69].

**Smith & Taft,** for defendant.

**WINCH, J.**

This case comes into this court on appeal and was heard upon demurrer to the amended answer.

The petition sets forth that plaintiff is the owner of fifty-eight, fully paid, nonassessable shares of the capital stock of the defendant company, a corporation organized under the laws of the state of Maine; that for the purpose of meeting its losses and expenses, the defendant company is attempting to levy and collect an assessment of five dollars per share upon the stock of plaintiff and other stockholders and, on August 26, 1904, notified him that unless he paid said assessment within five days, it would sell his stock. Alleging the insolvency of the corporation and the injury which would result to him if his stock should be so sold, plaintiff prays that defendant be enjoined from selling his stock, or offering it for sale.

The answer admits plaintiff's ownership of stock and the attempt to levy an assessment thereon, sets forth the regularity of the steps taken to levy the assessment, pleads the laws of Maine regulating corporations, and further sets forth a contract dated December 24, 1901, signed by all of the stockholders of the Buckeye Fish Company, including plaintiff, wherein it was agreed that a reduction company should be organized to take over the reduction part of the business of said Buckeye Fish Company, said company to be formed to have a capitalization of $1,500,000 and that $1,200,000 of its stock should be issued to the stockholders of the Buckeye Company *pro rata* as the purchase price of certain patents and processes owned by said company, such stockholders agreeing that the executive committee of the Buckeye Fish Company should take the necessary steps to incorporate said new company in such state as said

Orton v. Machinery Co.

committee should deem best, take charge of stock subscriptions and the delivery of said stock to the signers of said agreement.

The answer alleges that the defendant company was organized pursuant to said agreement and its stock issued as therein provided, plaintiff obtaining his stock in that manner; that the property turned over in payment for said $1,200,000 of stock was at the time carried on the books of the Buckeye Fish Company at a valuation of only $200,000 and was at the time of no more value than that amount; that the new company had no other assets than the patents and processes so conveyed to it, which plaintiff and all other stockholders well knew, and that they then knew and contemplated that to develop said patents and processes, put the same upon the market and construct plants and machinery to operate under the same would involve a large additional expense, and that they authorized the directors and officers of the defendant company, by electing them as such, to incur such expense, well knowing that there were no resources from which they could be paid, except by assessment upon the stockholders, which defendant company made in order to provide funds for the prosecution of the business of the company.

The answer further alleges that by reason of the premises, plaintiff's stock, although it purports to be paid up stock, is not paid-up stock; that it was never delivered to the stockholders as such and that it would be an actual fraud upon its creditors to so treat the same.

A second defense pleads the force and effect of said contract of December 24, 1901, as an authorization to the directors of the defendant company to incur indebtedness for the prosecution of the business of the company; that said indebtedness was created with plaintiff's knowledge; that there was no other way to pay said indebtedness except by an assessment on the stock, and that by making said assessment the directors were carrying out the intention and object of the stockholders, and plaintiff should not now be heard to deny the right of the directors to make said assessment.

The contract is not set out in full in the pleadings, but it is apparent from what is set out that by it no express authority was given by the stockholders to the directors to make any assessments and that the corporation has taken no steps to rescind or set aside the original issue of its stock in payment for the property mentioned in said contract.

The statutes of Maine, under which this corporation was incorporated, provide that, ''No payment upon any subscription to, or agreement for, the capital stock of any corporation, shall be deemed a payment within the purview of this chapter, unless *bona fide* made in cash, or

·in some other matter or thing at a *bona fide* and fair valuation thereof'' (Sec. 87, Chap. 47 Rev. Stat.) ; ''That assessments, not exceeding the amount originally limited for a share, may be made on all the shares subscribed and *not paid for*,'' Sec. 37; and that ''any corporation may purchase mines, manufactories and other property necessary for its business   *   *   ·*   and issue stock to the amount of the value thereof in payment therefor,   *   *   *   and the stock so issued shall be full-paid stock and not liable to any further call or payment thereon; and ın the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased, or services rendered, shall be conclusive.''   Section 50.

The truth of the allegations of the answer that the property turned over to the corporation to pay for the stock issued by it was worth only one-fifth the par value of said stock and that said fact was well known to all the parties to the transaction, is admitted by the demurrer.   Such being the case, the real value of the property being so grossly inadequate, it is claimed by defendant that an action would lie in favor of a creditor of the corporation, to compel the stockholders to pay up the other four-fifths on their shares; that if a creditor has a right to compel such payment as an unpaid subscription, the corporation itself can voluntarily require it

In answer to this it may be stated that the authorities are not agreed that a creditor, after exhausting the assets of the company, can compel a stockholder to make good the difference between the par value of his shares and the real value of property exchanged for them.

Thompson in his treatise on Corporations, inclines to the conclusion that where property is turned in to the corporation in payment of its shares, under whatever scheme, at an overvaluation, to the knowledge of the contracting parties, this will be evidence of fraud such as will render the stockholder liable.   2 Thompson, Corporations Secs. 1616, 1621.

1 Cook, Corporations Sec. 46, says:

''They, (corporate creditors) seek to hold the stockholders liable for the par value of the stock, less the real value of the property which was turned in to the corporation.   During the past ten years there has been a vast amount of litigation on this subject.   The courts disagree in their conclusions, but a careful study of the cases will show that upon authority as well as principle the stockholders cannot be held liable in such a case.   *   *   *

''The reason of the rule is, that if the payment by property was fraudulent, then the contract is to be treated like other fraudulent

Orton v. Machinery Co.

contracts. It is to be adopted *in toto*, or rescinded *in toto* and set aside. Both parties are to be restored as nearly as possible to their original positions. The property or its value is to be returned to the person receiving the stock, and he must return the stock or its real value."

The authorities, however, agree that:

"The corporation itself, after issuing its stock as paid-up stock, and declaring it so to be, cannot subsequently repudiate that declaration and agreement and proceed to collect, either from the person receiving the stock or his transferee, the unpaid part of the par value. It is estopped from so doing.

"Where, however, actual fraud enters into the transaction, then the corporation is not estopped from having the agreement set aside. The person receiving the stock can then be compelled to return the stock or its market value, and take back that which he gave to the corporation for it. But the corporation cannot hold him liable for the par value of the stock." 1 Cook, Corporations Sec. 38. See also 2 Thompson, Corporations Chap. XXVII, *passim*.

Believing the law as stated by Cook is applicable to this case, the demurrer to the amended answer is sustained.

**Hale** and **Marvin, JJ.,** concur.